IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| TWO SHIELDS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 4:12-cv-160-DLH-CSM |
| | ) | |
| v. | ) | |
| | ) | |
| WILKINSON JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*AMICUS* **BRIEF OF THE UNITED STATES IN PARTIAL SUPPORT OF
DEFENDANTS' MOTIONS TO DISMISS**

ROBERT G. DREHER
Acting Assistant Attorney General

STEPHEN R. TERRELL
CA Bar No. 210004
Trial Attorney
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:     (202) 616-9663
Fax:     (202) 305-0506
Stephen.Terrell@usdoj.gov

Attorney for *Amicus* United States

# TABLE OF CONTENTS

INTEREST OF *AMICUS* .................................................................................................. 1

I.  INTRODUCTION ..................................................................................................... 1

II.  PLAINTIFFS' PENDING COURT OF FEDERAL CLAIMS LAWSUIT ........................... 2

III.  PLAINTIFFS' CLAIMS ............................................................................................ 2

IV.  RULE 19 ................................................................................................................. 3

V.  ARGUMENT ........................................................................................................... 4

   A.  The United States is a Required Party That Cannot be Joined. ........................................... 4

   B.  Rule 19's First Factor Warrants Dismissal. ......................................................................... 9

   C.  Rule 19's Second Factor Warrants Dismissal. .................................................................... 10

   D.  Rule 19's Third Factor Warrants Dismissal. ...................................................................... 11

   E.  Rule 19's Fourth Factor Warrants Dismissal. .................................................................... 13

VI.  CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Confederated Tribes of the Chehalis Indian Reservation v. Lujan*,
928 F.2d 1496 (9th Cir. 1991) ........................................................................ 9

*Davis ex rel. Davis v. United States*, 343 F.3d 1282 (10th Cir. 2003).......................................... 12

*Enter. Mgmt. Consultants v. United States, ex rel. Hodel*, 883 F.2d 890 (10th Cir. 1989) ...... 9, 11

*Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994) .................................................................... 8

*Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542 (2d Cir. 1991) ....................................... 10

*Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977).............................................................................. 12

*Kickapoo Tribe v. Lujan*, 728 F. Supp. 791 (D.D.C. 1990).................................................... 11, 13

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
327 F. Supp. 2d 995 (W.D. Wis. 2004) .......................................................... 8

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975)........................................................... 7

*Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir. 1987) ........................................................................ 9

*Paiute-Shoshone Indians of Bishop Colony, Cal. v. County of Los Angeles*,
637 F.3d 993 (9th Cir. 2011) .......................................................................... 11

*Pembina Treaty Comm. v. Lujan*, 980 F.2d 543 (8th Cir. 1992) .................................................. 3

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)...................... *passim*

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ........................................................... 10

*Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001) .................................... 1, 3, 7, 11

*Tang v. Immigration and Naturalization Serv.*, 223 F.3d 713 (8th Cir. 2000)............................ 10

*United States v. Navajo Nation*, 556 U.S. 287 (2009) .................................................................. 13

*Wichita and Affiliated Tribes of Okla.*, 788 F.2d 768 (D.C. Cir. 1986).......................................... 9

## Statutes

Act of July 7, 1998, Pub. L. No. 105-188, 112 Stat. 620................................................................ 6

5 U.S.C. § 701 ...................................................................................................... 13

25 U.S.C. § 396 ...................................................................................................... 4

25 U.S.C. § 403 ...................................................................................................... 4, 5

**Regulations**

25 C.F.R. Part 161

    169.1 ...................................................................................................... 4

25 C.F.R. Part 211

    211.24 ...................................................................................................... 5

    211.27 ...................................................................................................... 5

    211.28 ...................................................................................................... 5

    211.51 ...................................................................................................... 5

    211.54 ...................................................................................................... 6

    211.58 ...................................................................................................... 13

25 C.F.R. Part 212

    212.4 ...................................................................................................... 4

    212.6 ...................................................................................................... 4

    212.20 ...................................................................................................... 4, 5

    212.21 ...................................................................................................... 4

    212.24 ...................................................................................................... 5

    212.27 ...................................................................................................... 5

    212.28 ...................................................................................................... 5

    212.40 ...................................................................................................... 4

    212.41 ...................................................................................................... 5

212.48.................................................................................................. 4

212.49.................................................................................................. 4

212.51.................................................................................................. 5

212.54.................................................................................................. 6

212.58................................................................................................ 13

43 C.F.R. Part 3160............................................................................ 4

## Rules

Fed. R. Civ. P. 12........................................................................... 2, 14

Fed. R. Civ. P. 19......................................................................... *passim*

Fed. R. Civ. P. 24.............................................................................. 8

## Other Authorities

3A *Moore's Federal Practice* (2d ed. 1994) .............................................. 9

## INTEREST OF *AMICUS*

*Amicus*, the United States, through its Department of the Interior, manages approximately 882,149 acres of trust land in North Dakota for Indian tribes and individual Indians (circa 2011). The Department of the Interior has an interest in the judicial interpretation of and application of its oil and gas leasing regulations pertaining to Indian land.  The United States is also routinely involved in litigation involving Indian trust land in this judicial district.  As plaintiffs' complaint, and defendants' motion to dismiss, implicate federal law administered by the Department of the Interior and federal actions, the United States has an interest in presenting its views to this Court.

## I.    INTRODUCTION

To prevail on their claims, plaintiffs must prove that "[t]he United States . . . breached its fiduciary duty" to plaintiffs, individual Indians with interests in allotted land on the Fort Berthold Indian Reservation.  Plaintiffs' Consolidated Opp'n ("Opp'n") at 2, ECF No. 64.  Plaintiffs propose to establish this alleged breach of fiduciary duties by the United States with the United States *in absentia*.  As plaintiffs repeatedly—and correctly—acknowledge, the United States has not waived its sovereign immunity from plaintiffs' breach of trust damages claims in this Court. *See id.* at 4, 51 n.20, 60-61.  Nonetheless, the United States and the Department of the Interior have a paramount interest in the discharge of their oil and gas leasing statutes and regulations and the judicial interpretation of those statutes and regulations.  Because the United States cannot be joined as a party to this lawsuit, because plaintiffs must establish that the United States violated a statutory or regulatory fiduciary obligation to prevail on its claims against defendants, and because defendants cannot "be expected to articulate the government's position on its behalf in its absence, . . . the prejudice to the government is obvious." *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 746 (8th Cir. 2001).  Thus, plaintiffs' complaint should be dismissed for

failure to join a required party.  Fed. R. Civ. P. 12(b)(7), 19(b).  The United States takes no

position herein as to alternative bases for dismissal argued in defendants' motions.

## II.      PLAINTIFFS' PENDING COURT OF FEDERAL CLAIMS LAWSUIT

As acknowledged by plaintiffs, they have advanced virtually identical claims as are at

issue in this case against the United States in an action currently pending before the United States

Court of Federal Claims, *Two Shields v. United States*, No. 13-90L (Fed. Cl. filed Feb. 1, 2013).

From what the United States can discern from plaintiffs' complaint in this case and plaintiffs'

complaint in the Court of Federal Claims, plaintiffs seeks the exact same relief in both cases.

Furthermore, the United States maintains that plaintiffs are seeking damages in the Court of

Federal Claims that were sought (and were settled) in yet a third case, *Cobell v. Salazar*, No. 96-

cv-1285 (D.D.C. filed June 10, 1996).  Thus, at the outset, the United States observes that

plaintiffs have asserted the same claims in three different courts against both defendants herein

and the United States.

## III.     PLAINTIFFS' CLAIMS

Plaintiffs advance six causes of action, purportedly under North Dakota common law, in

this case.  Compl. at ¶¶ 205-239, ECF No. 1.  Plaintiffs allege that common to all putative class

members' claims are issues of law such as "[t]he legal standards governing the fiduciary

obligations of the United States" and "[t]he extent to which . . . the United States . . . has

complied with its fiduciary obligations."  *Id.* at ¶ 199.  Each cause of action set forth in plaintiffs'

complaint, except for plaintiffs' Sixth Cause of Action (for an accounting), requires proof of the

United States' alleged breach of fiduciary duty.  *See id.* at ¶¶ 207 (First Cause of Action—"the

United States failed to meet its fiduciary obligations"); 214 (Second Cause of Action—"a breach

of fiduciary duty that the United States owes to Plaintiffs"); 225 (Third Cause of Action—"a

breach of fiduciary duty by the United States"); 228 (Fourth Cause of Action—"the breach of

fiduciary duty by the United States"); 234 (Fifth Cause of Action—"aiding and abetting, and inducing, a breach of fiduciary duty by the United States").  Thus, central to plaintiffs' complaint, and a necessary element of proof should plaintiffs' claims proceed to the merits, is whether the Department of the Interior violated any statutory or regulatory fiduciary obligations in approving defendants' oil and gas leases.

## IV.   RULE 19

Under Rule 19(a), a party "must be joined" if, *inter alia*, the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."  If a party must be joined under Rule 19(a), but cannot be joined, then the Court should consider whether it should dismiss the action.

Rule 19(b) authorizes a district court to exercise its equitable powers to dismiss an action if a party regarded as "indispensable" cannot be joined.  Under Rule 19, a nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty.  *Pembina Treaty Comm. v. Lujan*, 980 F.2d 543, 544-45 (8th Cir. 1992).  Rule 19 sets forth four factors that should be considered by the Court in exercising its discretion to dismiss a case for non-joinder: 1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" 2) the ability of the court to lessen any prejudice absent joinder; 3) "whether a judgment rendered in the person's absence would be adequate;" and 4) "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder."  Fed. R. Civ. P. 19(b).  A court's decision to dismiss an action for failure to join an indispensable party is reviewed for abuse of discretion.  *Spirit Lake Tribe*, 262 F.3d at 746.

## V.      ARGUMENT

### A.      The United States is a Required Party That Cannot be Joined.

Oil and gas leasing on allotted Indian land is governed by statutes and regulations.  The Secretary of the Interior's role in Indian leasing is largely supervisory and the parties to Indian leases are the Indians and the third-party lessee.[1/]  25 U.S.C. § 396 allows an Indian allottee to lease his or her mineral interests, subject to the rules and regulations enacted by the Secretary of the Interior.  The mineral leasing statute applies concurrently with the general Indian leasing statute, which provides that "[a]ny Indian allotment held under a trust patent may be leased by the allottee for a period not to exceed five years, subject to an in conformity with such rules and regulations as the Secretary of the Interior may prescribe. . . ."  25 U.S.C. § 403.

Oil and gas leasing on allotted Indian land implicates several bureaus within the Department of the Interior.  The Bureau of Indian Affairs ("BIA") is responsible for leasing and surface permitting.  *See*, *e.g.*, 25 C.F.R. § 212.20; 25 C.F.R. §§ 169.1, *et seq.*  The Bureau of Land Management ("BLM") is responsible for approving applications for permits to drill.  *See* 25 C.F.R. §§ 212.4, 212.49.  BLM requires lessees and operators on Indian land to comply with onshore operating regulations found at 43 C.F.R. Part 3160.  Once wells are drilled and oil and gas are produced in paying quantities, the Office of Natural Resource Revenue ("ONRR") is responsible for royalty collection and enforcement.  *See* 25 C.F.R. §§ 212.6, 212.40.[2/] Reclamation and remediation efforts during and upon conclusion of the oil and gas operation are overseen by BIA and BLM.  *See* 25 C.F.R. § 212.48.  The actions of each bureau are proscribed by regulations.

---

[1/]      The exception to this general rule, not applicable here, is when the Indian is a minor or incompetent.  *See* 25 C.F.R. § 212.21.

[2/]      ONRR is a successor bureau to the Minerals Management Service ("MMS").

The applicable regulations permit Indian allottees to lease mineral interest by competitive bid or by private negotiation.  25 C.F.R. § 212.20(b).  For private negotiation, a mineral lease may be approved by the Secretary if "one or more of the Indian mineral owners of a tract sought for lease requests the Secretary to negotiate for a lease on their behalf without advertising."  *Id.*  If the Secretary determines that an allottee's request for private negotiation is unreasonable, or if there is no request for private negotiation, the mineral lease is advertised and sealed bids are received.  *Id.*  Upon receipt of the bids, the Secretary may accept the bid of the qualified bidder offering the highest bonus payment, reject any or all bids, re-advertise the tract for sale, or (with consent of the allottees) lease the parcel through a private negotiation.  *Id.*  No lease becomes final until approved by the allottee.  *Id.*, subd. (c).

The bid process guarantees the allottee the highest bonus payment that the market is willing to bear for the tract of land at issue at the time of the lease, or the option to accept less than the highest bid through private negotiation.  Lease terms other than bonus payments are set by regulation and by BIA.  Rent must be a minimum of $2 per acre per year.  25 C.F.R. § 212.41 (a).  Royalties must be a minimum of 16 2/3 percent, "unless a lower royalty rate is agreed to by the Indian mineral owner and is found to be in the best interest of the Indian mineral owner."  *Id*, subd. (b).  By statute, the initial term of the lease is not to exceed five years.  25 U.S.C. § 403.  If the lease produces oil or gas in paying quantities, the term of the lease is extended "as long thereafter as the minerals specified in the lease are produced in paying quantities."  25 C.F.R. §§ 211.27 and 212.27.  Other lease terms are also specified by regulation.  *See*, *e.g.*, 25 C.F.R. §§ 211.24 and 212.24 (bond requirements); 211.28 and 212.28 (unitization and communitization agreements and well spacing); 211.51 and 212.51 (surrender).

The final lease, containing all terms of the lease, is executed by the allottee and the

lessee.  For oil and gas leasing on the Fort Berthold Indian Reservation, Congress has permitted

leases to be issued by the Secretary without competitive bidding and to be approved by allottees

that hold a majority interest in the allotment.  Act of July 7, 1998, Pub. L. No. 105-188, 112 Stat.

620.  Once the lease is executed, the Secretary of the Interior's designee then approves or

disapproves the lease.

 The United States clearly has an interest in the subject of this action under Rule

19(a)(1)(B).  At issue is whether the Secretary of the Interior properly discharged her obligations

as set forth in her leasing regulations.  The Secretary is currently administering the very leases

that plaintiffs claim are unlawful.  The Secretary has a responsibility to collect royalties for the

leases.  Only the Secretary has the authority to cancel a lease for failure to comply with

"applicable laws or regulations."  25 C.F. R. §§ 212.54 and 211.54(a).  Only the Secretary has

the authority to re-lease the property if the leases are, in fact, unlawful.  Because the Secretary is

not bound by this adjudication, the Secretary could continue to demand that the royalties in the

amount of the present lease be paid even if plaintiffs were to establish that those leases are

"unlawful" in this case.  The Secretary is responsible for lease enforcement of lease obligations

that the Secretary believes exist.  The Secretary has authority to take enforcement actions on

lease obligations that the Secretary believes exists.  Because the Secretary is not a party, the

Secretary could request the Attorney General to bring an affirmative collection action in any

appropriate venue, including those outside this jurisdiction, to enforce payment obligations

regardless of any settlement between plaintiffs and defendants or the outcome of this litigation.

 Thus, resolving this action in the Secretary's absence impairs the Secretary's interests in

overseeing oil and gas leasing on the Fort Berthold Indian Reservation.  Resolution of this case

in the Secretary's absence may subject defendants to inconsistent obligations.  While the

Secretary is not a party to the leases, the United States holds underlying legal title to the land at issue and its roles under the leases are directly implicated.  In this context, where lease legitimacy is at issues, all those who may be affected by the determination of the action are indispensable. *See Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975).  Although plaintiffs do not seek as relief in this action revocation of their leases, the damages award they request is premised on a theory that their leases were improperly entered into and should effectively be set aside.

Also, because defendants cannot "be expected to articulate the government's position on its behalf in its absence, . . . the prejudice to the government is obvious." *Spirit Lake Tribe*, 262 F.3d at 746.  Plaintiffs' instant complaint places at issue the United States' proper discharge of its statutory and regulatory authority with respect to oil and gas leasing on allotted Indian land, an interest of the United States that may be impaired or impeded if this case proceeds to the merits.  The Department of the Interior implements its oil and gas leasing regulations to, *inter alia*, encourage economic development in Indian Country and to encourage tribal self-determination.  The specter of tort claims by Indians against oil producers premised upon alleged breaches of trust by the United States would necessarily lead to varying and potentially inconsistent obligations and ongoing questions concerning the legality of the leases, potentially chilling the desire of bidders to bid on new leases.  The United States is therefore a "required party" under Rule 19(a)(1).

Plaintiffs urge the Court to conclude that the United States is not a required party under Rule 19.  Opp'n at 52-58.  Plaintiffs raise several arguments in their opposition.  Plaintiffs argue that resolution of this case will not impair or impede an interest of the United States. *Id.* at 53-55.  Plaintiffs also argue that Rule 19 does not apply because the United States may intervene

under Rule 24.  *Id.* at 55.  Neither of these arguments have merit.[3/]

Plaintiffs' argument that adjudication of plaintiffs' claims against defendants will not impair or impede interests of the United States (*id.* at 53-55) is incorrect.  As described above, and recognized by several courts, the United States has an interest in defending the Secretary's leasing decisions, in the correct application and interpretation of leasing statutes and regulations, and in ensuring that Indian lessees are not subjected to competing obligations.  The interests addressed by Rule 19(a) are not limited to a legal interest, instead the Court "must consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' [the absent party's] interest in the subject matter."  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110-111 (1968).  As such, plaintiffs' statement that any judgment against defendants will not be binding on the United States is irrelevant, and is a factor that has been explicitly rejected by the Supreme Court in assessing Rule 19's interest requirement.  *Id.* As correctly noted in *Spirit Lake Tribe*, where a plaintiffs' claim implicates the sovereign function of the United States' execution of the law, the United States is a required party.

Furthermore, plaintiffs' Rule 24 argument (Opp'n at 55) is a red herring.  Plaintiffs cannot compel the United States to submit to this Court's jurisdiction to protect its interests. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  Although a sovereign may intervene for a limited purpose, for example to urge dismissal for failure to join it as an indispensible party, *see Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004), nothing compels the sovereign to intervene under

---

[3/]     Plaintiffs' third argument, that defendants are "joint tortfeasors" with the United States (*id.* at 52-53) is belied by the fact that plaintiffs have never attempted to advance any claims against the United States under the Federal Tort Claims Act.

Rule 19. The possibility that the United States might be able to waive its sovereign immunity and intervene, or participate by filing an amicus brief, is irrelevant to Rule 19 analysis. *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991); *Wichita and Affiliated Tribes of Okla.,* 788 F.2d 768, 765 (D.C. Cir. 1986). The issue under Rule 19 is whether the absent party can be joined, not whether the absent party may intervene.

The United States has several interests that "as a practical matter" may be impaired or impeded if this case is allowed to proceed to the merits. Plaintiffs have not shown otherwise.

### B.      Rule 19's First Factor Warrants Dismissal.

Under the first discretionary factor of Rule 19(b), the Court should consider "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." The first Rule 19(b) factor is the *Patterson* third interest, "[t]hird, there is the interest of the outsider whom it would have been desirable to join." 390 U.S. at 110-11; *accord Nichols v. Rysavy*, 809 F.2d 1317, 1332 (8th Cir. 1987). However, recent case law—especially that dealing with Indian tribes, states, and foreign sovereigns—makes clear that application of these factors is severely truncated when the necessary party cannot be joined due to immunity. It has been held that when an indispensable party is immune from suit, there is very little room for balancing of other factors set forth in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves. *Enter. Mgmt. Consultants v. United States, ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989); *Wichita and Affiliated Tribes of Okla.*, 788 F.2d at 768; 3A *Moore's Federal Practice*, ¶ 19.15 n.6 (2d ed. 1994). As the Second Circuit has explained:

> The rationale behind the emphasis placed on immunity in the weighing of Rule 19(b) factors is that the case is not one where some procedural defect such as venue precludes litigation of the case.

*Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 548 (2d Cir. 1991) (citation omitted).

Thus, the Court's discretion is narrowed because of the importance of the Secretary's immunity,

rendering consideration of the factors in 19(b) to the periphery.  Hence, the Secretary, as an

indispensable party, coupled with her sovereign immunity warrants dismissal of this lawsuit.

 The Supreme Court, in reviewing cases addressing this factor and the United States'

sovereign immunity, concluded that "[a] case may not proceed when a required-entity sovereign

is not amenable to suit [and,] where sovereign immunity is asserted, and the claims of the

sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for

injury to the interests of the absent sovereign."  *Republic of Philippines v. Pimentel*, 553 U.S.

851, 867 (2008).  It is not disputed that this Court lacks subject-matter jurisdiction over

plaintiffs' damages claims for breach of trust against the United States.  *See* Opp'n at 4, 51 n.20,

60-61.  As discussed above, the United States has a uniquely sovereign interest in the application

of and interpretation of its laws and regulations.  *See*, *e.g.*, *Tang v. Immigration and

Naturalization Serv.*, 223 F.3d 713 (8th Cir. 2000) (according substantial deference to an

agency's interpretation of the statutes and regulations it administers).  Thus, dismissal of this

action should be ordered because "there is a potential for injury to the interests of the absent

sovereign."  *Pimentel*, 533 U.S. at 867.

 Plaintiffs' argument on this prong (Opp'n at 63) is a re-hash of their argument that the

United States is not a required party under Rule 19(b)(1).  Plaintiffs' complaint puts at issue the

United States' sovereign interest in the execution of federal law, thus, as in *Pimentel*, the

sovereign's non-frivolous claimed interest warrants dismissal.  This factor weighs strongly in

favor of dismissal.

**C.** **Rule 19's Second Factor Warrants Dismissal.**

 Under the second discretionary factor of Rule 19(b), the Court should consider "the

extent to which any prejudice could be lessened" by, *inter alia*, limiting relief or carefully crafting a judgment.  As recast by the Supreme Court, "[s]econd, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another."  *Patterson*, 390 U.S. at 110.  Here, absent joinder of the United States, defendants may face conflicting obligations and multiple litigation.  First, as correctly observed by defendants, Dakota-3 Mot. at 12, ECF No. 32, defendants are not in a position to defend the interests of the sovereign United States.  *Spirit Lake Tribe*, 262 F.3d at 746; *see also Paiute-Shoshone Indians of Bishop Colony, Cal. v. County of Los Angeles*, 637 F.3d 993, 1001 (9th Cir. 2011) (finding prejudice under this factor because defendant "cannot effectively defend against the crux of Plaintiff's allegations" which were against the United States).

Second, the Secretary has an interest as a federal decision-maker, *Kickapoo Tribe v. Lujan*, 728 F. Supp. 791, 797 (D.D.C. 1990), which is distinct from the lessor's proprietary and contractual interests.  *Enter. Mgmt. Consultants, Inc.*, 883 F.2d  at 894 (holding that the United States could not adequately represent the tribe's interests even though there was no inter-tribal conflict).  The Secretary's administrative adjudication of the parties' respective rights under the leases at issue in this case could differ from this Court's resolution.

Plaintiffs are incorrect that defendants "face the possibility of one and only one lawsuit for their misdeeds."  Opp'n at 61.  The Secretary, not bound by this Court's determination, could make demand on defendants under the original lease obligation, and if not paid could initiate suit for collection in any appropriate venue.  Plaintiffs also fail to distinguish *Paiute-Shoshone* (Opp'n at 62), which shares strikingly similar facts as are placed at issue by plaintiffs' complaint. This factor favors dismissal.

### D.    Rule 19's Third Factor Warrants Dismissal.

Under the third discretionary factor of Rule 19(b), the Court should consider "whether a

judgment rendered in the person's absence would be adequate."  As restated by the Supreme

Court, "there remains the interest of the court and the public in complete, consistent, and

efficient settlement of controversies."  *Patterson*, 390 U.S. at 111.  Adequacy refers to the

"public stake in settling disputes by wholes, whenever possible."  *Id.*  This "social interest in the

efficient administration of justice and the avoidance of multiple litigation" is an interest that has

"traditionally been thought to support compulsory joinder of potentially adverse claimants."  *Ill.*

*Brick Co. v. Illinois*, 431 U.S. 720, 737-38 (1977).

There is nothing complete, consistent, or efficient about allowing plaintiffs to seek

damages from defendants in this Court for alleged breaches of fiduciary obligations by the

United States.  This inefficiency is highlighted by the fact that plaintiffs have advanced these

same claims in a second lawsuit that is pending before the Court of Federal Claims.  Contrary to

plaintiffs' assertion, Opp'n at 64 ("nothing precludes this Court from granting Plaintiffs

complete relief"), the focus of this prong is "not intended to address the adequacy of the

judgment from the plaintiff's point of view."  *Davis ex rel. Davis v. United States*, 343 F.3d

1282, 1292-93 (10th Cir. 2003).  Instead, this factor focuses on dispute resolution.  *Id.*  Here, the

fundamental issue raised by plaintiffs' complaint—whether the United States breached any

fiduciary obligation to plaintiffs—will not be resolved as a whole if this case is allowed to

proceed.

In any event, the risk of multiple obligations does not make the claim adequate in any

event.   A judgment by this Court would not be adequate given the Secretary's  absence and the

prospect of a separate collection suit even if  plaintiffs prevail.  Judge Stanley articulated this

concern in *Kickapoo Tribe of Okla.*:

> And, again, if the Band is unable to represent itself in this action and the plaintiffs
> were to obtain a favorable judgment, the Band likely would bring a new lawsuit

against the Secretary.  After all, in considering the adequacy of the judgment, the Court must consider "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," . . . and in this case, further litigation could be anticipated.

728 F. Supp. at 797 (citation omitted).

It is foreseeable that in the event of a judgment in favor of plaintiffs in this matter, the Secretary would not feel bound by the determination, would continue efforts to collect under the leases, and a new suit could ensue initiated by the Secretary or against the Secretary.  That second suit could result in a judicial determination that the leases are valid and only the original amounts are collectible.  Thus, this lack of adequacy strongly weighs in favor of dismissal.

### E. Rule 19's Fourth Factor Warrants Dismissal.

The fourth discretionary factor under Rule 19 calls upon this Court to consider the plaintiffs' interest in having a forum.  *Patterson*, 390 U.S. at 110.  Plaintiffs have multiple fora in which they could have advanced their claims.  First, plaintiffs could have appealed the issuance of their leases administratively to BIA.  25 C.F.R. §§ 211.58 and 212.58.  Second, if plaintiffs believed that their leases were issued in contravention of Interior's leasing regulations, they could have sued in this Court to challenge Interior's approval of those leases under the judicial review provisions of the Administrative Procedure Act (5 U.S.C. §§ 701-706).  Third, Congress has waived the United States' sovereign immunity from damages claims in the Court of Federal Claims based upon a "substantive source of law that establishes specific fiduciary or other duties," alleging "that the Government has failed faithfully to perform those duties," provided that the violation that forms the basis of the claim "can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes."  *United States v. Navajo Nation*, 556 U.S. 287, 290-91 (2009).  Finally, Congress has waived the United States' sovereign immunity in this Court as to certain tort claims in the

Federal Tort Claims Act.

The United States does not concede that jurisdiction against it is proper under any of the foregoing, or waive any defenses available to it in any fora, but it is clear that plaintiffs have a forum.  Contrary to plaintiffs' assertion, Opp'n at 60, it is "equitable" to have plaintiffs advance claims that the United States breached its trust obligations against the United States in a forum where Congress has waived the United States' sovereign immunity as to those claims.  Thus, the fourth factor favors dismissal.

## VI.      CONCLUSION

Central to plaintiffs' first five causes of action are plaintiffs' allegations that the United States breached its fiduciary obligations to plaintiffs by approving their oil and gas leases with defendants.  To prevail on its first five causes of action, plaintiffs will have to prove that the United States violated a statutory or regulatory obligation in approving plaintiffs' leases.  That determination should not be made in the absence of the Secretary and the United States.  The United States in a required party in this case that cannot be joined.  All four factors under Rule 19(b) counsel in favor of dismissal of this case for failure to join a required party.  Thus, defendants' motion to dismiss under Rule 12(b)(7) should be granted.

The United States takes no position herein as to the balance of defendants' bases for dismissal, and does not concede the merits of either plaintiffs' or defendants' positions as to those arguments.

Respectfully submitted, August 13, 2013,

ROBERT G. DREHER
Acting Assistant Attorney General

/s/ Stephen R. Terrell
STEPHEN R. TERRELL
CA Bar No. 210004
Trial Attorney

- 14 -

Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:     (202) 616-9663
Fax:     (202) 305-0506
Stephen.Terrell@usdoj.gov

Attorney for *Amicus* United States