**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Ramona Two Shields and Mary Louise Defender Wilson, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Spencer Wilkinson, Jr., Rick Woodward, Robert Zinke, Dakota-3 E&P Company, LLC (n/k/a WPX Energy Williston, LLC), Zenergy, Inc., Dakota-3, LLC, Dakota-3 Energy, LLC, Zenergy Properties 6 Ft. Berthold Allottee, LLC, and John Doe, <br><br> Defendants. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** <br><br><br> Case No. 4:12-cv-160 |

Before the Court are six motions to dismiss filed by the Defendants on February 19, 2013. See Docket Nos. 31, 33, 37, 38, 41, and 57. The Plaintiffs submitted a consolidated response in opposition to the motions on April 22, 2013. See Docket No. 64. The Defendants filed reply briefs on May 24, 2013. See Docket Nos. 70, 71, 72, 73, and 74. As an alternative to dismissal, the Defendants ask that the case be stayed pending the outcome of the companion United States Court of Federal Claims case. See Docket Nos. 46, 48, and 75. The United States filed an amicus brief on August 13, 2013. See Docket 94. Oral arguments were held on November 15, 2013, in Bismarck, North Dakota. For the reasons set forth below, the Rule 12(b)(7) motions are granted. The Rule 12(b)(1) and 12(b)(6) motions are denied as moot and without prejudice.

I.    **BACKGROUND**

The Plaintiffs are two Native Americans and North Dakota residents who leased their allotted Fort Berthold Reservation mineral interests to the Defendants in 2007 and 2008 during the early stages of the Bakken Shale oil development in North Dakota. The Plaintiffs filed two putative class action lawsuits advancing virtually identical claims relating to those oil and gas leases. The first class action lawsuit was filed against the United States in the United States Court of Federal Claims on February 1, 2013, Two Shields v. United States, No. 1:13-cv-90-LB (Fed. Cl. Feb. 1, 2013). The Court of Federal Claims case alleges the United States breached its fiduciary duty in approving leases which were not in the best interests of the Native American allottees.[1]

The second lawsuit was filed in this Court on November 26, 2012. Along with the request for class certification, the complaint in the present case contains claims under North Dakota common law for aiding and abetting and tortiously inducing breach of fiduciary duty, two counts requesting imposition of a constructive trust, conspiracy, and a request for an accounting. See Docket No. 1. The Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1331. The necessary underlying predicate to the lawsuit is that 25 U.S.C. § 396 and its implementing regulations create a fiduciary duty owed by the United States to the Plaintiffs and the putative class members which the United States breached when it approved the oil and gas leases. Monetary damages are sought in both cases.

The Plaintiffs contend that between 2006 and 2010, the Defendants leased approximately 42,000 acres of mineral interests from themselves and other individual allottees at rates far below market value. There were approximately 289 leases entered into between the parties. The Plaintiffs

---

[1] The Court was informed during oral argument that dispositive motions have been filed with the Court of Federal Claims which are awaiting a decision. The dispositive motions may resolve all of the legal issues presented in this dispute. It is the Government's position that the claims of all of the individual allottees in this case are barred by the class action settlement in *Cobell* which was finally resolved in early 2013. The Government contends the Plaintiffs in this lawsuit are all members of the "trust administration" subclass in *Cobell* which, among other things, settled all claims against the United States for the mismanagement of mineral interests. As a result, the decision of the Court of Federal Claims may have significant impact on every lease in question in North Dakota.

contend they and the other allottees received bonuses in the range of hundreds of dollars per mineral acre and an 18% royalty rate, at a time when the going rates ranged from $1,000 to $16,500 per acre for bonuses, and royalty rates as high as 22.5%.  In addition, in January 2008 the Defendants leased 42,500 acres of mineral interests directly from the Three Affiliated Tribes at an 18% royalty rate and a $50 per mineral acre bonus in January 2008.  The Bureau of Indian Affair (BIA) approved all the leases as required by law.  The Three Affiliated Tribes is not a party to this litigation sd the tribe has not challenged the government approval of the leases.  The Plaintiffs allege the Defendants, knowing BIA approval of the leases was required, engaged in a "scheme" to improperly influence the BIA to ignore its fiduciary duties and approve the leases when it was not in the best interests of the Native American allottees to do so.  It is further alleged the Defendants assigned the leases ("flipped" the leases) to Williams Companies in late 2010 for approximately $925 million dollars.  Defendants Spencer Wilkinson Jr., Rick Woodward, and Robert Zinke are identified as the principals in the alleged scheme who used the business entities identified as Defendants, Dakota 3 LLC, Dakota-3 E&P Company (n/k/a WPX Energy Williston), LLC, Dakota-3 Energy, LLC, Zenergy Inc., and Zenergy Properties 6 Fort Berthold Allottee, LLC, to accomplish their plan.  Defendant John Doe allegedly bankrolled the enterprise.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(7) allows a defendant to seek dismissal of a case for failure to join a party under Federal Rule of Civil Procedure 19.  See Fed. R. Civ. P. 12(b)(7).  In analyzing a Rule 12(b)(7), courts accept as true all the well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party.  5C Wright & Miller, Federal Practice and Procedure § 1359 (3d ed. 2004).  The Court is not limited to the pleadings in its consideration of a Rule 12(b)(7) motion.  Id.; Cafesjian v. Armenian Assembly of Am., Inc., No. 07-2079, 2008 WL

906194 at *4 (D. Minn. Mar. 31, 2008). Dismissal is appropriate under Rule 19 if the moving party demonstrates: (1) an absent and required party should be joined; (2) the court cannot join the absent, required party; and (3) the case cannot proceed "in equity or good conscience" without the absent, required party. See Fed. R. Civ. P. 19(b).

### III.   LEGAL ANALYSIS

The Defendants contend the action must be dismissed because the United States is a required party under Rule 19(a), and an indispensable party that cannot be joined under Rule 19(b). The Defendants further contend that if the case proceeds without the United States as a named defendant, the case will unfairly litigate claims against the Government without its participation. In the alternative, the Defendants ask that the case be stayed in its entirety until the companion case pending in the Court of Federal Claims is resolved. The United States filed an amicus brief wherein it argues it is a required and indispensable party which cannot be joined, and the case should be dismissed. The Plaintiffs contend the United States is neither a required nor indispensable party and they are opposed to any stay of the proceedings.

#### A.   RULE 19

Rule 19 of the Federal Rules of Civil Procedure mandates that the court conduct a two-part inquiry when determining whether an action should be dismissed for failure to join an indispensable party. Initially, the court must determine whether the absent person's presence is "required." Fed. R. Civ. P. 19(a). An absent person's presence is "required" in two instances. The first is when complete relief cannot be accorded among the existing parties because of the absent person. Fed. R. Civ. P. 19(a)(1)(A). The second is when the absent person claims an interest in the subject of the

action that is of such a character that disposing of the action would either impair or impede that person's ability to protect their interest as a practical matter or would leave an existing party in substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the absent person's interest. Fed. R Civ. P. 19(a)(1)(B)(i) and (ii).  If the presence of an absent person is "required," the court must order that the person be joined if feasible. Fed. R. Civ. P. 19(a)(2).  If the absent "required party" cannot be joined, the court must proceed to the second step of its inquiry and determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b); Pembina Treaty Comm. v. Lujan, 980 F.2d 543, 544-45 (8th Cir. 1992).

   Rule 19 sets forth four factors to be considered by the court in exercising its discretion to dismiss a case for non-joinder: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" (2) "the extent to which any prejudice could be lessened or avoided" by carefully crafting the judgment; (3) "whether a judgment rendered in the person's absence would be adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder."  Fed. R. Civ. P. 19(b).  In addition, four key interests must be kept in mind: (1) the plaintiff's interest in having a forum; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole obligation for a liability shared with another; (3) the interests of the absent party; and (4) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.  Nichols v. Rysavy, 809 F.2d 1317, 1332 (8th Cir. 1987).  In making the joinder determination under Rule 19(b) the court must undertake a practical examination of the circumstances and avoid a inflexible formulistic approach.  Whether a party is indispensable can only be determined in the context of the particular litigation.  Spirit Lake Tribe v. N. D., 262 F.3d 732, 746 (8th Cir. 2001).

       1)    **RULE 19(a)**

It is clear and undisputed that the United States cannot be joined in this action as it has not waived its sovereign immunity. The United States has sovereign immunity and no one, including Native American tribes or individual allottees, may sue the United States without first obtaining permission from Congress. Under the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims has exclusive jurisdiction over monetary claims against the United States where the value of the claim exceeds $10,000. There is no dispute the Plaintiffs cannot prevail in this action absent a finding the United States, acting through the Bureau of Indian Affairs and the Secretary of the Interior, breached certain fiduciary duties owed to the Plaintiffs in approving the leases in question. To prevail on its causes of action the Plaintiffs' will have to prove that the Government violated a statutory or regulatory fiduciary obligation in approving the Plaintiffs' leases.

The claimed interest of the United States is in defending the BIA and the Secretary of the Interior's leasing decisions, in the correct application and interpretation of oil and gas leasing statutes and regulations, and in ensuring that Native American lessees are not subjected to competing obligations. Oil and gas leasing on allotted Indian land is governed by federal statutes and regulations. See 25 U.S.C. § 396; 25 C.F.R. § 212 *et seq*. A number of federal agencies are involved in the process. The BIA is responsible for leasing and surface permitting. See, e.g., 25 C.F.R. § 212.20; 25 C.F.R. § 169.1, *et seq*. The Bureau of Land Management ("BLM") is responsible for approving applications for permits to drill. See 25 C.F.R. §§ 212.4. Once wells are drilled and oil and gas are produced in paying quantities, the Office of Natural Resource Revenue ("ONRR") is responsible for royalty collection and enforcement. See 25 C.F.R. §§ 212.6. Reclamation and remediation efforts during and upon conclusion of the oil and gas operations are overseen by the BIA and the Bureau of Land Management. See 25 C.F.R. § 212.48. The actions of each federal agency are governed by a multitude of federal regulations.

The applicable leasing procedures provide that "Indian mineral owners may request the Secretary to prepare, advertise and negotiate mineral leases on their behalf" or "request the Secretary to negotiate for a lease on their behalf without advertising." 25 C.F.R. § 212.20. The Secretary of the Interior is charged with establishing the royalty rate which is not subject to negotiation. 25 C.F.R. § 212.20(2). The minimum royalty rate of 16 2/3% is set by regulation. 25 C.F.R. § 212.41. Leases are to be advertised in such a manner as to maximize competition for bonus payments. 25 C.F.R. § 212.20(b)(1). The Secretary of the Interior retains the authority to reject all bids upon a finding that it is not in the best interests of the mineral owner to accept any of the bids received. 25 C.F.R. § 212.20(b)(6). In addition to the implementing regulations, Congress has passed specific legislation which permits leases to be issued by the Secretary of the Interior without competitive bidding and to be approved by a simple majority of the allottees holding an interest in a particular allotment. Pub. L. No. 105-188, 112 Stat. 620 (1998).

The Court has no trouble concluding the United States is a "required party" who should be joined if feasible. The Secretary of the Interior is currently administering the leases which are the subject of this lawsuit. The interest of United States, as sovereign trustee of the allotted lands in question, and as the administrator of the leases in question, is self-evident in light of Rule 19(a)(1)(B)(i)'s requirement that consideration be given to whether the judgment would "as a practical matter" impair the absent party's ability to protect its interests. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 110 (1968). A judgment finding the United States breached its fiduciary duties would significantly impair the interests of the federal government which include administering the mineral leases in question and overseeing the letting of new leases. It would also have a chilling effect on the bidding of new leases. The potential prejudice to the United States is obvious given the private party Defendants cannot be reasonably expected to fully articulate the Government's position. Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 746 (8th Cir. 2001). A

finding that the United States breached its fiduciary duties is a necessary predicate to virtually all of the Plaintiffs' claims. It would certainly be best for all involved if the United States was a party to the action and available to fully explain and defend its actions, and protect its interest. Since the United States has a significant interest in the action and cannot be joined, the question becomes whether the case may proceed in the absence of the United States as a party. To answer this question the Court turns to an analysis of Rule 19(b) of the Federal Rules of Civil Procedure. See Patterson, 390 U.S. at 109-11.

### 2)    RULE 19(b)

Under Rule 19(b) the Court must undertake a practical examination of the circumstances of the case and determine whether "in equity and good conscience" the action should proceed among the existing parties or whether it should be dismissed. See Lujan, 980 F.2d at 545. The Court will address each of the four factors identified by Rule 19(b).

The first factor requires consideration of whether a judgment rendered in the person's absence would prejudice the person or the other parties. In other words, the interests of the absent party (the United States) must be considered. In cases involving the intersection of sovereign immunity and an absent government entity, the application of Rule 19 involves a "heavy emphasis" on protecting the governmental interest. 7 Wright & Miller, Federal Practice and Procedure, § 1617 (3d ed. 2001); Wichita and Affiliated Tribes of Okla. v. Hodel, 788 F.2d 765, 777 n. 13 (D.C. Cir. 1986). The United States Supreme Court has stressed that in any Rule 19(b) discussion where immunity is asserted, and the sovereign's interest is not frivolous, dismissal is required where there is a potential for injury to that interest. Republic of the Phil. v. Pimental, 553 U.S. 851, 867 (2008) (citing cases analyzing the intersection of joinder and the sovereign immunity of the United States).

It is clear that any resolution of this case requires the trier of fact to judge the performance of the BIA and the Secretary of Interior's lease approval process. The Plaintiffs have essentially accused federal agents of wrongdoing. Therefore, the United States is the proper party to defend itself against the accusations. The United States, as a sovereign, has a unique interest in the application and interpretation of its own laws and regulations. As the Court noted above in the Rule 19(a) discussion, that interest is unquestionably compelling. Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 548 (2d Cir. 1991) (immunity may be viewed as a compelling interest by itself). This interest is jeopardized if the United States is an absent party and thus not able to adequately explain and defend its actions.

The Plaintiffs reliance on *Houle* is misplaced. Houle v. Cent. Power Elec. Coop., Inc., No. 4:09-cv-021, 2011 WL 1464918, at *27 (D.N.D. Mar. 24, 2011). The dispute in *Houle* arose out of Central Power's construction of a 69 kV high-voltage transmission line across the Turtle Mountain Indian Reservation, including a tract of allotted land owned by the United States in trust for the Houles. Central Power had constructed most of the 69 kV line within public road rights-of-way and took the position that it did not need to acquire easements from the owners of the underlying land. However, for some of the Indian allotments, Central Power acquired easements covering a strip of land adjacent to the road rights-of-way, even though the transmission towers were placed within the road rights-of-way. It was not clear whether Central Power needed these easements or whether they were part of a political deal with the tribal council to provide some compensation to the individual allottees.

Central Power attempted to obtain the Houles' consent to an easement for a 45' wide strip of land adjacent to the right-of-way for Bureau of Indian Affairs ("BIA") Road No. 5 as it runs from the north to south across the easterly edge of the Houles' allotment. When Central Power could not reach an agreement with the Houles, it commenced construction anyway.

The Houles then filed a *pro se* action for injunctive relief with the tribal court, claiming that Central Power was trespassing because it had not acquired an easement for its power line from the Secretary of the Interior consented to by the Houles. The Houles contended that an easement was needed even for the portion of their allotment covered by the BIA's road right-of-way. The Houles also disputed the width of the BIA's right-of-way that Central Power claimed it was entitled to use.

Central Power filed a written response contesting the jurisdiction of the tribal court and argued that the case should be dismissed because the United States was a necessary party. With respect to the merits, Central Power argued it had the right to proceed with construction because it had obtained an occupancy permit from the BIA, which it contended was the only approval it needed for the location of the transmission line within the BIA's road right-of-way.

The question presented in *Houle* was whether the utility had followed proper procedures in obtaining an easement, and whether the tribal court had exceeded its jurisdiction in its handling of the matter. The Court found that while the United States was an interested party under Rule 19(a), it was not an indispensable party under Rule 19(b) as the case did not raise a challenge to the validity or lawfulness of the conveyance by the United States. To the contrary, the crux of the present dispute is whether the United States breached its fiduciary duties in approving the oil and gas leases in question. Unlike *Houle*, the actions of the Secretary of the Interior and the BIA are at the forefront of the present dispute.

The Plaintiffs suggest the United States could protect its interest by moving to intervene. However, the critical issue is whether the absent party can be joined, not whether the absent party may intervene. To intervene would require the United States to waive its sovereign immunity. The absent sovereign cannot be forced to choose between protecting its interests and waiving its immunity. Hodel, 788 F.2d at 777. There is no question that a judgment rendered in the absence of

10

the United States may prejudice the federal government. The Court finds the first factor weighs in favor of a dismissal of the action.

The second factor to be examined is the extent to which prejudice can be lessened or avoided by carefully crafting the judgment or taking other measures. Of concern are the interests of the Defendants in avoiding multiple litigation, inconsistent relief, or sole responsibility for liability shared with another. Patterson, 390 U.S. at 110. In *Patterson*, the Supreme Court observed that a defendant "may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another." Id. If the case were to proceed without the United States as a party, the Defendants will essentially be forced to defend the actions of the government in approving the mineral leases in question. To do so would require access to the thought process and motivations of government officials involved in the leasing process who may or may not be willing or able to assist, and over whom the Defendants have no control. See Spirit Lake Tribe, 262 F.3d at 746; Paiute-Shoshone Indians of the Bishop Comm. of the Bishop Colony, Calif. v. City of Los Angeles, 637 F.3d 993, 1001 (9th Cir. 2001) (finding prejudice under this factor from the absence of the United States because the defendants cannot defend an entity over which it has no control and whose actions form the crux of the plaintiff's allegations).

The Defendants cannot reasonably be expected to defend the actions of various federal governmental entities over which they arguably had no control. Proceeding with this lawsuit in the absence of the United States would unduly prejudice the Defendants because the Defendants, by themselves, cannot effectively defend against the crux of the Plaintiffs' allegations. There is no practical means to lessen or avoid this prejudice. The Court finds this factor weighs against allowing the Plaintiffs to proceed with the lawsuit and in favor of a dismissal of the action.

The third factor asks the Court to consider whether a judgment rendered in the absence of the party who cannot be joined would be adequate. This factor requires consideration of the interests of

the public and courts in the "complete, consistent and efficient settlement of controversies." Patterson, 390 U.S. at 111. The fundamental question presented in this lawsuit is whether the United States breached its fiduciary obligations to the Plaintiffs by approving their oil and gas leases with the Defendants. To answer this question in the absence of the United States as a party to the litigation would cast serious doubt on the outcome. This fundamental issue forms the basis for the companion case pending in the Court of Federal Claims. The risk of inconsistent rulings is real and of significant importance. Inconsistent rulings would certainly create confusion with the public as the Secretary of the Interior would not necessarily be bound by any judgment rendered in this Court. See Pimental, 553 U.S. at 870-71 (concluding it is not in the public interest to go forward in the absence of a sovereign who cannot be joined and would not be bound by the judgment). Whatever the outcome of the two related cases, the Secretary of the Interior is charged with the administration of the mineral leases. Allowing this case to go forward in federal district court in the absence of the United States does not foster the complete, consistent, and efficient settlement of the controversy. As the Supreme Court instructed in *Patterson*, the courts and the public have an interest in the complete and efficient settlement of controversies. Patterson, 390 U.S. at 111. The Court finds this factor favors dismissal of the action.

The fourth factor identified in Rule 19(b) is whether the Plaintiffs would have an adequate remedy if the action were dismissed. This factor, which primarily focuses on the interests of the Plaintiffs, arguably weighs in their favor. However, it is clear the Plaintiffs have an available remedy in the form of their pending action against the United States in the Court of Federal Claims. This is not a case where the dismissal for non-joinder results in a complete bar to recovery.

The Court notes that several forums were available for the Plaintiffs to have advanced their claims, although each presented its own procedural and jurisdictional challenges. For example, if the Plaintiffs believed their oil and gas leases were issued in contravention of the applicable leasing

regulations, they could have arguably sued in federal district court to challenge the Secretary of the Interior's approval of those leases under the judicial review provisions of the Administrative Procedure Act (5 U.S.C. §§ 701-706). In addition, Congress has waived the United States' sovereign immunity from damage claims in the Court of Federal Claims. Congress has also waived the United States' sovereign immunity as to certain tort claims under the Federal Tort Claims Act.

Even though dismissal is not a complete bar to recovery, this Court is sensitive to the unsatisfactory situation faced by the Plaintiffs. However, the lack of an adequate forum does not preclude dismissal. Pimental, 553 U.S. at 872; Northern Arapaho Tribe v. Harnsberger, 697 F.3d 1272, 1283 (10th Cir. 2012). In some cases, especially where sovereign immunity is a concern, a party may be left with a forum that is not completely satisfactory, or with no forum at all. Id. While this factor arguably weighs in favor of the Plaintiffs, it does not outweigh the other three factors which favor dismissal under the circumstances.

After a careful examination and consideration of the Rule 19(b) factors, the Court concludes as a matter of law that the analysis favors a finding that the United States is a necessary and indispensable party and the action should be dismissed. Simply stated, the Rule 19(b) analysis does not favor allowing the Plaintiffs to proceed with this action in federal district court in the absence of the United States. The interests of the United States as sovereign are compelling. To proceed in the absence of the United States as a party to the litigation would be inconsistent with "equity and good conscience" and thus a dismissal is required. It is clear that to prevail in this action the Plaintiffs will have to essentially prove the federal government violated a statutory and/or regulatory obligation in the approval of the Plaintiffs' oil and gas leases. The Court finds this critical determination should not be made in the absence of the BIA, the Secretary of the Interior, and the United States. In summary, the Court has carefully considered all of the factors under Rule 19(b) and concludes that such factors strongly favor dismissal of the case for failure to join a required party. Having

13

determined that the United States is a necessary and indispensable party, the request for a stay is moot.

## IV.     CONCLUSION

The Defendants' Rule 12(b)(7) motions to dismiss (Docket No. 31, 37, and 57) are **GRANTED**.  The Rule 12(b)(1) and 12(b)(6) motions to dismiss (Docket No. 33, 38, 41, and 57) are **DENIED as moot and without prejudice.**  The motions to stay (Docket Nos. 46, 48, and 75) are **DENIED as moot**.

**IT IS SO ORDERED.**

Dated this 26th day of November, 2013.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

14